U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

JUL 18 200?

CLERK, U.S. DISTRICT COURT

By

Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| JOSEPH HILL CARTIER, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | Civil Action No. 2:03-CV-0088 |
| | § | |
| JANIE COCKRELL, Director, | § | |
| Texas Department of Criminal | § | |
| Justice, Institutional Division, | § | |
| Respondent. | § | |

## RESPONDENT COCKRELL'S ANSWER WITH BRIEF IN SUPPORT

Joseph Hill Cartier ("Cartier") was convicted in a Texas state court of murder and was sentenced to life in prison. He now challenges his conviction and sentence in this Court pursuant to 28 U.S.C. § 2254, which provides this Court with jurisdiction over the subject matter and the parties. The writ should be denied because Cartier has failed to demonstrate that he is entitled to relief. The Director denies all of Cartier's assertions of fact except those supported by the record or specifically admitted herein.

## PETITIONER'S ALLEGATIONS

The Director understands Cartier to allege the following:

1.   He was denied the effective assistance of counsel;

2.   He was denied due process when the trial court refused to include a mitigation instruction in the punishment charge;

3.   He was denied due process when the trial court refused to include a mitigation instruction applicable to a special issue in the punishment charge;

4.   The punishment charge was fundamentally defective and allowed the jury to return an non-unanimous verdict; and

5.   The standard instruction included in paragraph 15, 16 of the jury charge was insufficient.

## STATEMENT OF THE CASE

**I.     Course of Proceedings and Disposition Below**

The Director has lawful custody of Cartier pursuant to a judgment and sentence of the 251st Judicial District Court of Potter County, Texas, in cause number 39,817-C, styled *The State of Texas v. Joseph Hill Cartier*. *Ex parte Cartier*, Application No. 53,329-01, at 39. Cartier was charged by indictment with the felony offense of murder. *Id.* at 37. Cartier pleaded not guilty to the indictment, but the jury found him guilty. *Id.* at 39. On March 9, 2000, the jury assessed punishment at life in the Texas Department of Criminal Justice, Institutional Division. *Id.*

Cartier appealed his conviction to the Seventh Court of Appeals of Texas, which affirmed his conviction on May 1, 2001. *Cartier v. State*, 58 S.W.3d 756 (Tex. App.–Amarillo 2001); Exhibit A. His petition for discretionary review was refused by the Texas Court of Criminal Appeals on October 3, 2001. Exhibit B.

Cartier filed his first state writ application on July 1, 2002. *Ex parte Cartier*, Application No. 53,329-01, at 3. It was denied without written order by the Texas Court of Criminal Appeals on September 11, 2002. *Id.* at cover. Cartier filed his second state writ application on January 31, 2003. *Ex parte Cartier*, Application No. 53,329-02, at 3. It was denied without written order on the findings of the trial court[1] by the Texas Court of Criminal Appeals on April 16, 2003. *Id.* at cover.

Cartier executed his federal writ petition on March 26, 2003. Petition at 9. This proceeding follows.

---

[1] This appears to be an error, as this is a subsequent writ petition and there are no trial court findings.

2

## II.    Statement of Facts

The following statement of facts was taken from the opinion of the Seventh Court of Appeals

of Texas:

> Appellant does not challenge the sufficiency of the evidence. Thus, only the facts necessary to the disposition of this appeal will be discussed. On September 19, 1998, at approximately 2:30 a.m., appellant deceived his stepdaughter into letting him inside his estranged wife's house. He entered the bedroom where his wife, Linda, and the victim, Gary Brumm, were in bed together. He began choking Brumm and threatening to kill him. Linda managed to pull appellant off Brumm momentarily and then was pushed against a wall by appellant. Appellant then lunged at Brumm with a knife and cut his throat. Linda again managed to push appellant off Brumm allowing Brumm to escape from the bedroom, but only to collapse a few feet outside the bedroom. Appellant left the residence and Linda called 911. Brumm died at the hospital from a deep wound on the left side of his neck that perforated the jugular vein and carotid artery causing him to bleed to death.
>
> Appellant was tried by a jury for murder. During the punishment phase, the defense tendered all evidence that had been previously developed during the guilt/innocence phase and one additional witness testified to establish that Linda and Brumm had taunted appellant earlier on the night of September 18, 1998, while all three were at a local bar.

*Cartier v. State*, 58 S.W.3d at 757.

## STATE COURT RECORDS

Cartier's state court records, his direct appeal and his state habeas proceedings, are being

forwarded to this court contemporaneously with this answer.

## EXHAUSTION OF STATE REMEDIES

The Director believes that Cartier has not sufficiently exhausted his state remedies under

*Wilder v. Cockrell*, 274 F.3d 255, 260-61 (5th Cir. 2001) ( "[i]t is not enough ... that a somewhat

similar state-law claim was made".)  The claims raised herein that were not presented to the state

courts are unexhausted and therefore are procedurally defaulted  under *Vega v. Johnson*, 149 F.3d

354, 362 (5th Cir.1998), *cert. denied*, 119 S. Ct. 899 (1999);  *Muniz v. Johnson*, 132 F.3d 214, 221

3

(5th Cir.), *cert. denied*, 118 S. Ct. 1793 (1998) and *Nobles v. Johnson*, 127 F.3d 409, 422 (5th Cir. 1997), *cert. denied*, 118 S. Ct. 1845 (1998) (*Vega, Muniz*, and *Nobles*, held that the defaulted claims had yet to be presented to the State courts; therefore, they were unexhausted and procedurally defaulted, concluding that the respective petitioners could not satisfy the standard for avoiding a state citation for abuse of the state writ). For these reasons, the Director does not move to dismiss for failure to exhaust state court remedies.

<strong>ANSWER</strong>

### Standard of Review

As Cartier's petition was executed on March 26, 2003, this petition is subject to review under the amendments to the federal habeas corpus statutes embodied in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Williams v. Cain*, 125 F.3d 269, 274 (5th Cir. 1997). Under the AEDPA, "[t]his Court may not issue a writ of habeas corpus for a defendant convicted under a state judgment unless the adjudication of the claim by the state court '(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.'" *Riddle v. Cockrell*, 288 F.3d 713, 716 (5th Cir. 2002) (quoting 28 U.S.C. § 2254(d)(1)-(2) (West 2002)).

The Supreme Court has explained that a state court decision is "contrary" to established federal law if the state court "applies a rule that contradicts the governing law set forth in [the Court's] cases," or confronts facts that are "materially indistinguishable" from a relevant Supreme Court precedent, yet reaches an opposite result. *(Terry) Williams v. Taylor,* 529 U.S. 362, 405-06 (2000); *Hernandez v. Johnson,* 248 F.3d 344, 346 (5th Cir. 2001). Alternatively, a state court "unreasonably applies" clearly established federal law if it correctly identifies the governing precedent from the Supreme Court's precedents but unreasonably applies it to the facts of a particular case. *Williams,* 529 U.S. at 407-09; *Hernandez,* 248 F.3d at 346.

4

A federal habeas court's inquiry into unreasonableness should be objective rather than subjective, and a court should not issue the writ simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. *Williams,* 529 U.S. at 409-11; *Tucker v. Johnson,* 242 F.3d 617, 620-21 (5th Cir. 2001). Rather, federal habeas relief is only merited where the state court decision is both incorrect *and* objectively unreasonable. *Williams,* 529 U.S. at 411; *Martin v. Cain,* 246 F.3d 471, 476 (5th Cir. 2001). In other words, habeas relief is inappropriate when a state court, at a minimum, reaches a "satisfactory conclusion." *Williams,* 529 U.S. at 410-11 (citing *Wright v. West,* 505 U.S. 277, 287 (1992)).

Further, the Fifth Circuit has held that it is the state court's "ultimate decision" that is to be tested for unreasonableness, "not every jot of its reasoning." *Santellan v. Cockrell,* 271 F.3d 190, 193 (5th Cir. 2001); *see Neal v. Puckett,* 286 F.3d 230, 246 (5th Cir. 2002) (*en banc*) (holding that a federal court's "focus on the 'unreasonable application' test under Section 2254(d) should be on the ultimate legal conclusion that the state court reached and not on whether the state court considered and discussed every angle of the evidence"), *cert. denied,* 123 S. Ct. 963 (2003).

Finally, pre-AEDPA precedent forecloses habeas relief if a claim (1) is procedurally barred as a consequence of a failure to comply with state procedural rules, *Coleman v. Thompson,* 501 U.S. 722 (1991); (2) seeks retroactive application of a new rule of law to a conviction that was final before the rule was announced, *Teague v. Lane,* 489 U.S. 288 (1989); or (3) asserts trial error that, although of constitutional magnitude, did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson,* 507 U.S. 619, 637 (1993) (citation omitted).

## I.   Cartier's first ground for relief, that he was denied the effective assistance of counsel, is without merit.

Cartier complains that he was denied the effective assistance of counsel in 20 particulars, each of which will be addressed in turn. Memorandum at 15-18.

The proper standard for evaluating the effectiveness of counsel is reasonable performance under prevailing professional norms. *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Supreme Court established a two prong test for deciding ineffective assistance claims. Under that test, a defendant must show that counsel's performance was deficient, and that the deficient performance prejudiced the defense. *Id.* at 687. A reviewing court need not consider the deficiency prong if it concludes that the defendant has demonstrated no prejudice. *Id.* at 697. The defendant moreover, may not simply allege but must "affirmatively prove" prejudice. *Id.* at 693. In order to prove prejudice "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

The burden of proof in a habeas corpus proceeding attacking the effectiveness of trial counsel is upon the petitioner, who must demonstrate that ineffectiveness by a preponderance of the evidence. *Martin v. Maggio*, 711 F.2d 1273 (5th Cir. 1983). In determining the merits of an alleged Sixth Amendment violation, courts "must be highly deferential" to counsel's conduct. *Strickland v. Washington*, 466 U.S. at 687.

### A.    Failure to confer with Cartier.

Cartier complains that trial counsel conferred with him only twice prior to trial. Once to take his statement, and once to deliver a plea bargain offer. As Cartier offers only his own assertions in support of this claim, it is a conclusory allegation that will not support federal habeas corpus relief. "Conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding." *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000)(citing *Ross v. Estelle*, 694 F.2dd 1008, 1013 (5th Cir. 1983)(conclusory allegations unsupported by any specific facts do not merit a federal court's attention); *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir.

1990)("mere conclusory allegation on a critical issue are insufficient to raise a constitutional claim").

Alternatively, Cartier wholly fails to allege what trial counsel should have discovered but did not,

thus failing to demonstrate any prejudice.

**B.      Failure to prepare any kind of a defense whatsoever.**

This allegation is false.  As is clear from the opinion of the Seventh Court of Appeals, trial

counsel presented a sudden passion defense, though a witness who saw the victim and Cartier's wife

taunting him in a bar on the night of the murder. *Cartier v. State*, 58 S.W.3d at 757.

**C.      Failure to investigate law as applied to the facts and circumstances of this case.**

This allegation is too general and conclusory to warrant relief.

**D.      Counsel never advised Cartier as to defend himself adequately.**

This is another conclusory allegation.

**E.      Counsel only called one witness to the stand, and made no attempt to present
          even so much as a character witness.**

Cartier's complaint that trial counsel failed to call unnamed witnesses is a conclusory

allegation that will not support federal habeas corpus relief. *Ross v. Estelle,* 694 F.2d at 1011.[2]  First,

Cartier has not supplied the state courts or this court with affidavits regarding the substance of the

---

[2]  Ross alleged ineffective assistance of counsel because trial counsel failed to investigate and interview his wife. Ross alleged that his wife would have supplied defense counsel with an alibi defense.  However, the Fifth Circuit held:

> We point out, however, that there is no basis existing anywhere in the record-save Ross' statement in his pro se brief-which supports his assertion as to what his wife would have testified to.  Absent evidence in the record, a court cannot  consider a habeas petitioner's bald assertions on a critical issue in his pro se petition (in state and federal court), unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value.

7

uncalled witnesses' testimony. "Where the only evidence of a missing witness' testimony is from the defendant, this Court [Fifth Circuit] views claims of ineffective assistance with great caution." *See Lockhart v. McCotter,* 782 F.2d 1275, 1282 (5th Cir. 1986), *citing Schwander v. Blackburn,* 750 F.2d 494, 500 (5th Cir. 1985); *see also United States v. Cockrell,* 720 F.2d 1423, 1427 (5th Cir. 1983) (Cockrell failed to produce the affidavit of the uncalled witness). Second, Cartier has not proved that any of the uncalled witnesses would have appeared at trial and testified. "In order for the appellant to demonstrate the requisite *Strickland* prejudice, the appellant must show not only that this testimony would have been favorable, but also that the witness would have testified at trial." *See Alexander v. McCotter,* 775 F.2d 595, 602 (5th Cir. 1985), *citing Boyd v. Estelle,* 661 F.2d 388, 390 (5th Cir. 1981); *Gomez v. McKaskle,* 734 F.2d 1107, 1109-10 (5th Cir.), *cert. denied,* 469 U.S. 1041, 105 S.Ct. 524 (1984). Finally, "[C]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." *See Boyd v. Estelle,* 661 F.2d 388, 390 (5th Cir. 1981) *quoting Buckelew v. United States,* 575 F.2d 515, 521 (5th Cir. 1978). Further, the Fifth Circuit has held that "[H]ypothetical or theoretical testimony will not justify the issuance of a writ. . ." *See Martin v. McCotter,* 796 F.2d 813, 819 (5th Cir. 1986), *quoting Larsen v. Maggio,* 736 F.2d 215, 218 (5th Cir.), *cert. denied,* 469 U.S. 1089, 105 S.Ct. 598 (1984). Since Cartier has not overcome the presumption that the "challenged action 'might be considered sound trial strategy,'" *Strickland,* 466 at 689, 104 S.Ct. at 2065, he cannot satisfy his burden of proof.

In summary, Cartier's allegation of ineffectiveness should be dismissed as conclusory because he has not supplied any court with the testimonial affidavits of the uncalled witnesses; he has not proven that the uncalled witnesses would have appeared and testified favorably to his case; and trial

8

counsel's actions in not calling these witnesses is presumed to be strategical in nature and Cartier has not overcome this presumption.[3]

**F.** **No social or psychiatric evaluation was conducted even though "sudden passion" was his only defense.**

This claim is without merit for a couple of reasons. One, it is essentially another conclusory uncalled witness claim. Cartier has failed to establish what a psychiatrist or social worker would have testified to that would have assisted in his defense, as he offered no evidence in support of this claim. Second, he has failed to establish that such evidence was necessary to establish a sudden passion defense and, indeed, he got his sudden passion instruction without any expert testimony. This claim is without merit.

**G.** **Counsel did not attempt to enter into reasonable plea bargain negotiations.**

It is clear from Cartier's memorandum that trial counsel was involved in plea bargain negotiations. That trial counsel was not able to obtain an offer that was to Cartier's liking does not prove any failure on the part of counsel. This claim is conclusory and without merit.

**H.** **Counsel never offered any advice at to what to plead.**

This claim is conclusory and without merit.

**I.** **Counsel never adhered to the duty and loyalty demanded of a professional attorney as guided by the State Bar rules.**

This claim is conclusory and without merit.

---

[3] An attempt by Cartier to supply the affidavits of the uncalled witnesses in this action will result in the Director objecting that he has failed to exhaust state court remedies. The state makes this statement at this juncture to put Cartier on notice and to properly assert exhaustion during the district court proceedings, at the first available opportunity.

**J.     Counsel did not adequately cross-examine Roxanne Star or impeach her with a prior inconsistent statement.**

Cartier complains that trial counsel did not adequately cross-examine Roxanne Star or impeach her with a prior inconsistent statement to the police. A review of the record demonstrates that trial counsel did cross-examine Star with her prior statement. 3 Reporter's Record ("RR") at 195-209.

**K.     Counsel failed to investigate impeachment evidence of state's witness.**

This claim is conclusory and without merit.

**L.     Counsel failed to properly advocate applicant's cause, or to develop a "sudden passion" defense," or to prepare a voluntary manslaughter charge in a lesser included offense charge to the jury based upon strong evidence of sudden passion.**

These first two allegations are conclusory, in that Cartier does not allege with any specificity how counsel failed to advocate his cause or failed to develop his sudden passion defense. Obviously the sudden passion defense was developed well enough to warrant a sudden passion instruction. Clerk's Record ("CR") at 49-51. Additionally, Cartier was not entitled to a charge on the lesser included offense of voluntary manslaughter. *See* Tex. Penal Code §§ 6.03, 19.04. While sudden passion was once a guilt/innocence issue, that changed with the enactment of the of the 1994 Penal Code, when the offense of "voluntary manslaughter" was replaced with "manslaughter," and the issue of "sudden passion" was moved to the punishment phase of the trial. *Trevino v. State*, 100 S.W.3d 232, 236 (Tex. Crim. App. 2003). A charge on "voluntary manslaughter" was not available to Cartier, who killed his victim in 1998. *Cartier v. State*, 58 S.W.2d at 757. Therefore, trial counsel was not ineffective for failing to request a charge on voluntary manslaughter.

**M.** **Counsel failed to develop evidence relevant to Cartier's facts and circumstances and prepare a psychological state of mind report at the time of the offense.**

This is another allegation that a psychological expert could have established that Cartier acted with sudden passion, and it is conclusory.

**N.** **Counsel failed to object to the prosecutor's testifying to the jury during closing argument, where prosecutor made statement of fact that were not in evidence, which inflamed the minds of the jury, or ask the court for instructions to the jury concerning the same.**

Cartier complains that trial counsel should have objected to the prosecutor's argument that the defendant had the knife in his hand while he was choking the victim, because that was an impossible feat. Memorandum at 11. No such argument was made at guilt/innocence. 3 RR 272-76. This argument was made at the punishment phase of the trial. 4 RR 47. To be proper, argument must fall within one of the following four categories: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; or, (4) plea for law enforcement. *Todd v. State*, 598 S.W.2d 286, 296-97 (Tex. Crim. App.1980). The prosecutor was making what he thought was a reasonable deduction from the evidence, and any objection would have been futile. To render effective assistance, counsel is not required to make futile objections. *Westley v. Johnson*, 83 F.3d 714, 722 (5th Cir.1996); *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir.1990). Instead, trial counsel chose to counter that argument in his own argument. 4 RR 54-55. This claim is without merit.

**O.** **Counsel failed to object to the inadmissible extraneous offense testimony.**

Cartier complains that trial counsel failed to object to extraneous offense testimony that came in during the punishment phase of the trial. Memorandum at 12. However, evidence of extraneous crimes or bad acts is admissible at the punishment phase of the trial. Tex. Crim. Proc. Code Ann.

11

art. 37.07 § 3(a)(1). Therefore, any objection by counsel would have been futile.

**P.      Counsel failed to move for a mistrial due to highly inflammatory prosecutor's opinions during closing arguments.**

*See* Section I.N., *supra*.

**Q.      Counsel failed to object or move for a mistrial when the court allowed the trial to proceed without polling the jury after the jurors has lengthy conversations with the courtroom audience during trial recess.**

The Director cannot find any evidence in the record that jurors had lengthy conversations with the courtroom audience. At one point the judge admonished the audience not to discuss the case in the hall during breaks in case they accidentally intermingled with witnesses or jurors. 3 RR 146-47. The Director cannot find any evidence in the record to support Cartier's allegation about the jury, making this ineffective assistance of counsel claim conclusory and without merit.

**R.      "Counsel did not object or move for a mistrial even upon the court stated 'I don't know why counsel failed to move for a mistrial,' concerning juror's misconduct at about 17."**

The Director does not know exactly what this means and has failed to locate a statement like this by the Court in the trial record. The Director believes this claim to be conclusory and without merit.

**S.      "Counsel was fully aware of jurors misconduct and failed to advice trial court, and counsel was advised by the Court and still failed to object or move for mistrial."**

The Director believes this to be a rephrasing of allegation 18, as discussed in Section I.R., *supra*. The Director believes this claim to be conclusory and without merit.

T.      **Counsel failed to object when 13th juror deliberated with the jury.**

A thirteenth, or alternate, juror was excused after the reading of the court's charge, and did not deliberate with the rest of the jury. 3 RR 277. This allegation is without factual foundation.

II.     **Cartier's second and third grounds for relief, that he was denied due process when the trial court refused to include a mitigation instruction in the punishment charge, is without merit.**

Cartier complains in his second and third grounds for relief that he was denied due process when the trial court refused to include a mitigation instruction in the punishment charge. At the conclusion of the punishment phase of the trial, Cartier asked the Court for a mitigation instruction instructing the jury to give effect to mitigating evidence if it rejected his sudden passion defense. 4 RR 38-41. The instruction he requested may be found at CR 39. The Court denied his request for such an instruction, finding "that the Charge as presented does provide an adequate vehicle for the jury to consider all evidence before it in this case, including such evidence as they find to be mitigating." 4 RR 42. This claim was addressed at length and rejected by the Seventh Court of Appeals. *Cartier v. State*, slip op. at 757-60.

The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal. The question is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process. . . ," not merely whether "the instruction is undesirable, erroneous, or even 'universally condemned.'" *Henderson v. Kibbe*, 431 U.S. 145, 154-55, 97 S.Ct. 1730, 1736-37 (1977), (quoting *Cupp v. Naughten*, 414 U.S. 141, 146, 94 S. Ct. 396, 400 (1973). The Director believes that the trial judge was correct, that the jury charge was adequate to allow the jury to give effect to any mitigating

13

evidence. Further, the Director knows of no Supreme Court case stating that a defendant in a non-capital case is entitled to a special mitigation instruction at punishment. Cartier fails to state a claim that would entitled him to federal habeas corpus relief or, alternatively, raises a claim that is barred under the AEDPA and *Teague*. This claim is without merit.

**III.   Cartier's fourth and fourth grounds for relief, that the punishment charge was fundamentally defective and allowed the jury to return an non-unanimous verdict, is without merit.**

Cartier complains, as he did on direct appeal, that the jury charge at punishment allowed the jury to return a non-unanimous verdict on the issue of sudden passion. His complaint about paragraph 16 of the jury charge is another way of stating the same claim. However, as the Seventh Court of Appeals pointed out before overruling these points of error, the jury instruction did require the jury to return a unanimous verdict. *Cartier v. State*, slip op. at 760; CR 53-54. This claim is without merit and, in addition, Cartier failed to raise and exhaust a federal constitutional claim in state court under *Wilder v. Cockrell*, 274 F.3d 255, 260-61 (5th Cir. 2001) ( "[i]t is not enough ... that a somewhat similar state-law claim was made".) Therefore, any federal constitutional claims Cartier may be attempting to raise here are both unexhausted and without merit.

### CONCLUSION

For all of the foregoing reasons, the Director respectfully requests that the petition for writ of habeas corpus be denied.

Respectfully submitted,

GREG ABBOTT
Attorney General of Texas

BARRY R. McBEE
First Assistant Attorney General

14

JAY KIMBROUGH
Deputy Attorney General
for Criminal Justice

GENA BUNN
Assistant Attorney General
Chief, Postconviction Litigation Division


*Attorney in Charge

*KARYL KRUG
Assistant Attorney General
Postconviction Litigation Division
State Bar No. 00786033

P. O. Box 12548, Capitol Station
Austin, Texas   78711
(512) 463-2140
Facsimile No. (512) 936-1280

ATTORNEYS FOR RESPONDENT


## CERTIFICATE OF INTERESTED PARTIES

I certify, pursuant to Local Rule 3.1(f) of the Northern District of Texas, that other than the petitioner, Joseph Hill Cartier, and the respondent, Janie Cockrell, Director, Texas Department of Criminal Justice, Institutional Division, counsel for respondent is unaware of any person with a financial interest in the outcome of this case.

KARYL KRUG
Assistant Attorney General

15

## CERTIFICATE OF SERVICE

I, Karyl Krug, Assistant Attorney General of Texas, do hereby certify that a true and correct copy of the above and foregoing Respondent Cockrell's Answer with Brief in Support has been served by placing it in the United States mail, postage prepaid, on this the 16th day of July, 2003, addressed to:

Joseph Hill Cartier
TDCJ-ID # 919319
Allred Unit
2101 FM 369 North
Iowa Park, Texas 76367

KARYL KRUG
Assistant Attorney General

16