IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION


JOSEPH HILL CARTIER,                    §
                                        §
        Petitioner,                     §
                                        §
v.                                      §           2:03-CV-0088
                                        §
DOUGLAS DRETKE, Director,               §
Texas Department of Criminal Justice,   §
Correctional Institutions Division,     §
                                        §
        Respondent.                     §


**REPORT AND RECOMMENDATION**
**TO DENY PETITION FOR A WRIT OF HABEAS CORPUS**

        Petitioner JOSEPH HILL CARTIER has filed with this Court a Petition for a Writ of

Habeas Corpus by a Person in State Custody challenging his conviction for the felony offense of

murder out of the 251st Judicial District Court of Potter County, Texas.  For the reasons

hereinafter expressed, the United States Magistrate Judge is of the opinion petitioner's

application for federal habeas corpus relief should be DENIED.


I.
FACTUAL AND PROCEDURAL HISTORY

        In August 1998, petitioner's wife, Linda Cartier (Linda), moved out of the residence she

shared with petitioner.  Shortly thereafter, Linda became involved with a man named Gary

Brumm.  In the early morning hours of September 19, 1998, petitioner's stepdaughter allowed

petitioner into the newly rented house she shared with her mother (Linda), petitioner's estranged

wife.  The state court of appeals summarized the evidence as follows:

> [Petitioner] entered the bedroom where his wife, Linda, and the victim, Gary
> Brumm, were in bed together.  He began choking Brumm and threatening to kill
> him.  Linda managed to pull [petitioner] off Brumm momentarily and then was
> pushed against a wall by [petitioner]. [Petitioner] then lunged at Brumm with a
> knife and cut his throat.  Linda again managed to push [petitioner] off Brumm
> allowing Brumm to escape from the bedroom, but only to collapse a few feet
> outside the bedroom. [Petitioner] left the residence and Linda called 911.  Brumm
> died at the hospital from a deep wound on the left side of his neck that perforated
> the jugular vein and carotid artery causing him to bleed to death.

*Cartier v. State,* 58 S.W.3d 756, 757 (Tex.App. – Amarillo 2001).

On October 29, 1998, petitioner was charged by indictment, in Cause No. 39,817-C

styled *The State of Texas vs. Joseph Hill Cartier*, with the first degree felony offense of "Murder

Intentionally Causing Death" under Texas Penal Code § 19.02(b)(1), to wit:

> [O]n or about the 19th day of September, 1998 . . . [petitioner] did then and there
> intentionally and knowingly cause the death of an individual, namely, GARY
> BRUMM, by cutting the neck of GARY BRUMM.

On March 9, 2000, a jury convicted petitioner of the first degree felony offense of murder as

charged in the indictment.  At the sentencing phase, the jury answered "No" to the following

special issue:

> Do you, the jury, find by a preponderance of the evidence that the Defendant,
> JOSEPH HILL CARTIER, caused the death of GARY BRUMM under the
> immediate influence of sudden passion arising from an adequate cause?

The jury assessed petitioner's punishment at confinement for life in the Texas Department of

Criminal Justice, Correctional Institutions Division, and assessed a fine of $10,000.

Petitioner appealed his conviction to the Court of Appeals for the Seventh District of

Texas who, on May 1, 2001, affirmed petitioner's conviction in a published opinion.  *Cartier v.

State*, 58 S.W.3d 756 (Tex.App. – Amarillo 2001).  Petitioner's petition for discretionary review

by the Texas Court of Criminal Appeals was refused on October 3, 2001.

On July 1, 2002, petitioner filed a state application for a writ of habeas corpus challenging the instant conviction.  *Ex parte Cartier*, No. 53,329-01.  On September 11, 2002, the Texas Court of Criminal Appeals denied petitioner's application without written order.  On January 31, 2003, petitioner filed a second state habeas application challenging his conviction raising claims of ineffective assistance of counsel.  *Ex parte Cartier*, No. 53,329-01.[1]  On April 16, 2003, this second application was denied without written order on findings of the trial court without a hearing.[2]  On March 26, 2003, petitioner filed the instant application for federal habeas relief in this Court.[3]

## II.
## PETITIONER'S ALLEGATIONS

Petitioner appears to contend he is being held in violation of the Constitution and laws of the United States for the following reasons:

1.    Petitioner was denied effective assistance of counsel because counsel:

    a.    failed to adequately confer with petitioner, or conduct a proper investigation, so as to properly prepare for trial;

    b.    failed to prepare an adequate defense in that he only called one (1) fact witness and did not call any character witnesses during the punishment phase of the trial;

---

[1]The Clerk's Summary Sheet attached to the habeas petition for transmittal to the Texas Court of Criminal Appeals erroneously indicated a habeas petition for inmate Ronald Edward Jackson, Cause No. 27,861-E.

[2]This action taken appears to be an error as this second petition was a subsequent writ petition and there were no trial court findings entered.

[3]*See Spotville v. Cain*, 149 F.3d 374, 375 (5th Cir. 1998) ("a *pro se* prisoner's habeas petition is filed, for purposes of determining the applicability of the AEDPA, when he delivers the papers to prison authorities for mailing.").

    c.        failed to give petitioner pretrial advice or enter into reasonable plea negotiations;

    d.        failed to impeach State's witness, Roxanne Star, with a prior inconsistent statement;

    e.        failed to proffer a written charge including the lesser included offense of voluntary manslaughter;

    f.        failed to secure an independent psychiatric evaluation, and failed to present expert testimony, regarding petitioner's mental state at the time of the offense to demonstrate "sudden passion";

    g.        failed to object to the prosecutor's statement, made during closing argument of the punishment phase, that he "knew defendant had the knife in his hands while he was choking the victim";

    h.        failed to object to the introduction of petitioner's past criminal history during the punishment phase on the basis that petitioner had not taken the stand;

    i.        failed to object to the testimony of a State witness regarding an inadmissible extraneous offense;

    j.        failed to object or move for a mistrial when the trial court allowed the trial to proceed without polling the jury after jurors were talking with the courtroom audience during a recess; and

    k.        failed to object when the 13th juror deliberated with the jury.[4]

2.        Petitioner was denied due process when the trial court refused to include a mitigation instruction in the court's punishment charge;

3.        Petitioner was denied due process because the trial court's punishment charge allowed the jury to only consider mitigating evidence with regard to the Special Issue of "sudden passion" and did not allow consideration of mitigating evidence in determining petitioner's punishment while it did allow aggravating evidence in determining petitioner's punishment;

---

[4]To the extent petitioner sets forth other allegations of ineffective assistance of counsel in the body of his Memorandum with Brief, or in the numbered listing in the Conclusion section of his Memorandum, at 15-18, such allegations are not addressed in petitioner's argument, are conclusory, are unsupported by any facts, and do not merit federal habeas corpus relief.  Therefore, they are not addressed in this Report and Recommendation.

        

4.      The punishment charge was fundamentally defective because it allowed
        the jury to return a non-unanimous verdict; and

5.      The instruction in the punishment charge was not sufficient to distinguish
        between "sudden passion" and a general verdict.

III.
EXHAUSTION AND PROCEDURAL BAR

Respondent contends petitioner has not sufficiently exhausted his state remedies as to the

ineffective assistance of counsel claims raised herein because they were not presented to the state

courts.  Respondent maintains, however, that petitioner is now procedurally barred from

obtaining consideration and/or relief on his claims and, thus, does not move to dismiss for failure

to exhaust.

The undersigned makes no determination as to whether petitioner's claims are exhausted.

This Court may deny relief on unexhausted claims.  As petitioner is not entitled to relief on his

claims, as set forth below, it is the opinion of the undersigned that petitioner's habeas application

be denied on the merits rather than dismissed due to any failure to exhaust state court remedies.

IV.
STANDARD OF REVIEW

This case was filed subsequent to the April 24, 1996 effective date of the Antiterrorism

and Effective Death Penalty Act of 1996 (AEDPA) and so the standards of review set forth in the

AEDPA apply to this case.  *Lindh v. Murphy*, 521 U.S. 320, 326, 117 S.Ct. 2059, 2063, 138

L.Ed.2d 481 (1997); *Williams v. Cain*, 125 F.3d 269, 274 (5th Cir. 1997).  Consequently,

petitioner may not obtain relief in this Court with respect to any claim adjudicated on the merits

in the state court proceedings unless the adjudication of the claim:

> (1)    resulted in a decision that was contrary to, or involved an unreasonable
>        application of, clearly established Federal law, as determined by the
>        Supreme Court of the United States; or

> (2)    resulted in a decision that was based on an unreasonable determination of
>        the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Further, all factual determinations made by a state court shall be presumed

to be correct and such presumption can only be rebutted by clear and convincing evidence

presented by petitioner.  28 U.S.C. § 2254(e).

Petitioner has sought collateral review of his conviction and sentence by way of state

habeas application.  The Texas Court of Criminals Appeals denied his first application without

written order.  *Ex parte Cartier*, App. No. 53,329-01.  The ruling of the Texas Court of Criminal

Appeals on the grounds presented in petitioner's first state habeas application constitute an

adjudication of petitioner's claims on the merits.[5]  *Bledsue v. Johnson,* 188 F.3d 250, 257 (5th

Cir. 1999).

## V.
## MERITS OF PETITIONER'S ALLEGATIONS

Federal habeas corpus will not lie unless an error was so gross or a trial so fundamentally

unfair that the petitioner's constitutional rights were violated.  In determining whether an error

was so extreme or a trial so fundamentally unfair, this Court must review the putative error at

issue, looking at the totality of the circumstances surrounding the error for a violation of the

petitioner's constitutional rights.  Based upon a review of the state court records and the

pleadings of record filed with this Court, it is the opinion of the Magistrate Judge that petitioner

has failed to show he is being unlawfully detained in violation of the Constitution and laws of

---

[5]*See* footnotes 1 and 2 concerning petitioner's second state habeas corpus application.

the United States.

## A.
### Effectiveness of Counsel

The proper standard for judging a petitioner's contention that he is entitled to relief on the ground that his trial counsel rendered ineffective assistance is enunciated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  Under the *Strickland* standard, a petitioner must show defense counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment to the United States Constitution.

A petitioner must also show counsel's deficient performance prejudiced the defense.  To establish this prong, petitioner must show counsel's errors were so serious as to deprive petitioner of a fair trial.  Specifically, petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different or that the errors were so serious as to deprive the petitioner of a fair trial with a reliable result."  *Id.* at 694.

In order to amount to ineffective assistance of counsel, counsel's performance must have fallen below an objective standard of reasonableness as determined by the norms of the profession.  Counsel's performance is reviewed from counsel's perspective at the time of trial, not from hindsight.  *Id.* at 689.  A reviewing court's scrutiny of trial counsel's performance is highly deferential, with a strong presumption that counsel's performance falls within the wide range of reasonable professional assistance.  *Id.*

The burden of proof in a habeas corpus proceeding attacking the effectiveness of trial

counsel is upon the petitioner, who must demonstrate that ineffectiveness by a preponderance of the evidence. *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1992), *cert. denied*, 508 U.S. 978, 113 S.Ct. 2977 (1993). Further, *Strickland* controls, and petitioner must show counsel's performance was deficient and that such performance prejudiced the defense.

### 1. Alleged failure to confer more with petitioner, or conduct a proper investigation, so as to properly prepare for trial

Petitioner contends counsel was ineffective because he conferred with him only twice prior to trial – once to take his statement, and once to deliver a plea bargain offer of 60 years. Petitioner does not allege, much less prove, what benefit any additional conference(s) with counsel would have achieved, nor does he allege what harm he suffered from not having additional conferences. Thus, petitioner cannot show he was prejudiced by any failure of counsel to confer with petitioner more often. Moreover, petitioner presents only his own self-serving, general, conclusory allegations that counsel did not conduct a proper investigation or prepare properly for trial. Consequently, such allegations do not raise a constitutional issue in this proceeding. Petitioner does not allege what further steps should have been taken by counsel in his investigation of the case, or how counsel was not prepared for trial. Petitioner's claim is without merit.

### 2. Counsel's alleged failure to prepare an adequate defense in that he only called one (1) fact witness and did not call any character witnesses during the punishment phase

Review of the record reveals counsel presented an adequate defense during both phases of the trial. Specifically, counsel aggressively cross-examined, and elicited mitigating character testimony from, the State's witnesses during the guilt/innocence phase and, during the

punishment phase, presented evidence that the victim and petitioner's wife were taunting petitioner in a bar on the night of the murder.  During closing argument, defense counsel persuasively suggested the evidence, considering the pattern of provocation on the part of the victim and petitioner's wife, presented a scenario of "sudden passion."[6]

Petitioner appears to argue counsel should have called other unnamed fact witnesses on his behalf at both the guilt/innocence and punishment phases, and as character witnesses during the punishment phase of the trial.  Complaints of uncalled witnesses are not favored in federal habeas review because allegations of what a witness would have testified are largely speculative. *Marler v. Blackburn*, 777 F.2d 1007, 1010 (5th Cir. 1985) (citing *Murray v. Maggio*, 736 F.2d 279, 282 (5th Cir. 1984)); *United States v. Cockrell*, 720 F.2d 1423, 1427 (5th Cir. 1983) (quoting *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978)).  In order to prevail on an uncalled witness claim, a petitioner must satisfy the court concerning the substance of the uncalled witnesses' testimony.  *See Lockhart v. McCotter*, 782 F.2d 1275, 1282 (5th Cir. 1986), *cert. denied*, 479 U.S. 1030, 107 S.Ct. 873, 93 L.Ed.2d 827 (1987) ("Where the only evidence of a missing witness' testimony is from the defendant, this Court views claims of ineffective assistance with great caution"); *Cockrell*, 720 F.2d at 1427 (Cockrell failed to produce the affidavit of the uncalled witness).  A petitioner must also prove the uncalled witness would have appeared at trial, and would have testified favorably.  *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985).

Here, petitioner has not shown defense counsel's refusal to subpoena certain alleged

---

[6]"Sudden passion" was defined in section 19.02(a)(2) of the Texas Penal Code as "passion directly caused by and arising out of provocation by the individual killed or which passion arises at the time of the offense and is not solely the result of former provocation."  At the punishment stage of a trial, the defendant was allowed to raise the issue as to whether he caused the death under the immediate influence of sudden passion arising from an adequate cause.  If the defendant proved the issue in the affirmative by a preponderance of the evidence, the offense was a second degree felony, rather than a first degree felony.

witnesses prejudiced the defense so as to deprive petitioner of a fair trial.  In fact, petitioner has

wholly failed to prove any deficiency on the part of trial counsel.  Petitioner has not established

the substance of the alleged testimony, that the alleged witness would have testified at trial, or

that such testimony would have been favorable.  Petitioner has not identified these witnesses, has

not provided the Court with any affidavits setting forth the substance of the purported testimony

these unnamed witnesses would have given.  He has not shown any such testimony would have

been favorable to his defense, nor has he shown these unidentified witnesses would have

appeared and testified in his behalf.  Petitioner has not shown it was not counsel's trial strategy

not to call additional witnesses, especially considering the fact that several of the State's

witnesses were petitioner's closest friends, had represented that petitioner was acting unusually

or out of character and was upset as a result of the situation with his wife on the night of, and the

weeks prior to, the offense.  Petitioner's claim is largely speculative and will not support

issuance of a federal writ of habeas corpus.  This claim should be denied.

### 3. *Counsel's alleged failure to give petitioner pretrial advice*
### *or enter into reasonable plea negotiations*

Petitioner does not identify what specific pretrial advice counsel should have rendered,

how such failure was deficient, or how the failure to give such advice prejudiced petitioner.  This

claim is too general, speculative and conclusory to warrant relief.  Moreover, petitioner has not

shown counsel was not involved in reasonable plea negotiations on petitioner's behalf.

Counsel's inability to secure a better offer from the state does not demonstrate counsel was

deficient in his representation of petitioner.  Petitioner does not allege, or prove, what plea offer

counsel  should have been able to obtain.  Petitioner has not shown how counsel was deficient or

how he was prejudiced on this claim, and it should be denied.

### 4. *Counsel's alleged failure to impeach the State's witness, Roxanne Star, with a prior inconsistent statement*

The testimony of Roxanne Star, a witness for the State, appears in Vol. III, at 183-209. On direct examination by the State, witness Star testified that when she saw petitioner at the crime scene, he looked at her and said, "I told you I was going to kill the m_____ f_____." *Id.* at 191.  On cross-examination, defense counsel pointed out that in her statement to the police on the night of the incident, witness Star had instead stated that petitioner said, "I'm going to kill the m_____ f_____."  Defense counsel also suggested witness Star had intentionally changed her statement to make it sound worse to the jury because of her disdain for petitioner.  *Id.* at197-99, 207-08.  Defense counsel clearly confronted witness Star with her prior statement to the police and attempted to impeach her with it.  The record also reveals defense counsel rigorously cross-examined the witness.  Petitioner has not alleged what further cross-examination should have taken place as to her statement, or how additional questioning as to her inconsistent statement would have aided his defense.  Petitioner's claim is without merit.

### 5. *Counsel's alleged failure to proffer a written charge including the lesser included offense of voluntary manslaughter*

Counsel presented and developed plaintiff's "sudden passion" defense sufficiently to warrant submission of a question in the trial court's charge to the jury as to whether petitioner caused the death of the victim "under the immediate influence of sudden passion arising from an adequate cause."  Petitioner's claims, however, that counsel should have proffered to the Court, and presumably obtained, a written charge including the "lesser included offense of voluntary

manslaughter." As noted by respondent, however, the offense of voluntary manslaughter was removed as a separate criminal offense from the Penal Code in 1994. The offense of "manslaughter" was inserted in its place, and the issue of whether the offense was committed under the influence of "sudden passion" was an issue only at the punishment phase of the trial, not the guilt/innocence phase of the trial.[7] When petitioner killed the victim in 1998, there was no such thing as an offense of "voluntary manslaughter" and thus a charge on "voluntary manslaughter" was not available. Counsel was not deficient for failing to request a jury charge for the lesser included offense of "voluntary manslaughter."

### 6. *Counsel's failure to secure an independent psychiatric evaluation, and failure to present expert testimony, regarding petitioner's mental state at the time of the offense to demonstrate "sudden passion"*

Petitioner argues counsel should have obtained a psychiatric evaluation of petitioner's mental state at the time he killed the victim, and should have presented expert testimony regarding such evaluation at trial, to demonstrate petitioner caused the victim's death under the immediate influence of sudden passion arising from an adequate cause. Petitioner has not shown precisely what a psychiatrist would have testified as to his mental state, how any such testimony would have assisted in his defense, or that the absence of such testimony prejudiced petitioner's defense. This claim is another conclusory, uncalled witness claim. Defense counsel adequately developed a sudden passion defense and the jury was presented with a special issue as to sudden passion. Defense counsel elicited testimony that petitioner was very protective of his family, that the victim had been "egging" petitioner on, that petitioner was mad, upset, acting out of

---

[7]If "sudden passion" is established by a defendant during the punishment phase, he is entitled to be punished in accordance with a second degree felony rather than a first degree felony. *See* Tex. Pen. Code Ann. §§ 12.32(a), 12.33(a) (Vernon 1994).

character, and felt threatened by the victim on the date of, and during the weeks prior to, the

incident.  Defense counsel also developed testimony that petitioner had acted irrationally

immediately after the incident and the next morning when he was arrested.  Petitioner was not

deprived of a potential defense by counsel's failure to obtain a psychiatric evaluation of

petitioner, and petitioner has and cannot demonstrate expert testimony as to the sudden passion

issue would have aided his defense, or that counsel's failure to obtain such expert testimony, was

detrimental to petitioner's asserted defense.  This claim is without merit.

### 7. *Counsel's failure to object to the prosecutor's statement, made during closing argument of the punishment phase, that he "knew defendant had the knife in his hands while he was choking the victim"*

Petitioner argues defense counsel was ineffective because he failed to object to a

statement by the prosecutor during closing argument at the punishment phase of the trial that he

"knew defendant had the knife in his hands while he was choking the victim."  Petitioner argues

the prosecutor alleged a basically "impossible feat to perform, and [that such] was stated to

inflame the emotions of the jury to give a stiffer sentence."  Petitioner contends counsel should

have objected and requested the trial court instruct the jury to ignore the prosecutor's "personal

testimony of events."

Review of the prosecutor's closing argument, however, does not reveal such statement.

The prosecutor did make statements to the following effect:

> He went in the room and began to choke him.  And in the middle of this fight –
> now, exactly when did he open that knife, ladies and gentlemen?  While he's
> choking Gary, he stops and pulls out his knife and pops it open?  I suggest the
> evidence indicates he had that knife open when he went in the house and it was in
> his hands.  Vol. IV, at 47.

> He had that knife open when he walked in the door.  I defy you to look at that and

the facts that came in that night and say he stopped in the middle of that room and pulled open that knife while he's in the middle of trying to choke somebody.

I would suggest to you that that knife wound went in the very first thing. He had his hands up there around the throat of Gary Brumm and those hands held a knife and he stabbed him four times. Vol. IV, at 61.

Under Texas law, a prosecutor is permitted to argue reasonable deductions from the evidence during closing argument. *See Todd v. State*, 598 S.W.2d 286, 296-07 (Tex.Crim.App. 1980). Here, the prosecutor's statements appear to be proper as reasonable deductions from the evidence. At most, defense counsel might have objected to the context and/or manner in which such comments were made, but any such objection to the statement could have been denied and would have been futile. Counsel is not constitutionally deficient for making futile objections. *Westley v. Johnson*, 83 F.3d 714, 722 (5th Cir. 1996). Moreover, the prosecutor was simply countering defense counsel's scenario suggested to the jury that when petitioner entered the house and began to choke the victim, his knife was still "on his side." Vol. IV, at 54-55. Petitioner has not shown defense counsel was deficient for failing to object to the prosecutor's statements made during summation.[8] This claim is without merit.

### 8. *Counsel's alleged failure to object to the introduction of petitioner's past criminal history during the punishment phase*

Petitioner appears to complain of defense counsel's failure to object to the introduction, during the punishment phase, of evidence of petitioner's criminal history on the ground that petitioner did not testify during either phase of the trial. Applicable Texas law at the time of petitioner's trial permitted evidence to be offered by the State and the defendant as to any matter

---

[8]The complained of statements by the prosecutor were made only at the summation of the punishment stage. Consequently, the statements did not affect the jury's verdict of guilty delivered at the guilt/innocence stage.

the trial court deemed relevant to sentencing, including but not limited to the prior criminal

record of the defendant, his general reputation, his character, an opinion regarding his character,

the circumstances of the offense for which he was being tried and, notwithstanding Rules 404

and 405, Texas Rules of Criminal Evidence, any other evidence of an extraneous crime or bad

act that was shown beyond a reasonable doubt by evidence to have been committed by the

defendant or for which he could be held criminally responsible, regardless of whether he had

previously been charged with or finally convicted of the crime or act.  *See* Tex. Crim. Proc. Code

Ann. 37.07 § 3(a)(1) (Vernon 2000).  The fact that petitioner did not testify did not prohibit the

introduction of the evidence at sentencing.  Any objection by defense counsel would have been

denied. Petitioner's claim is without merit.

### 9.  *Counsel's alleged failure to object to the testimony of a State witness regarding an inadmissible extraneous offense*

Petitioner argues counsel was deficient when he failed to object to testimony from a State

witness during the punishment phase of the trial, as to an extraneous act where he fired shots into

his truck as it was being driven away by a third party, hitting a previous girlfriend in the thighs

after she had packed up her belongings and moved out of a house she shared with petitioner.  As

set out under section A.8. above, Texas law at the time of petitioner's trial allowed the State and

the defendant to offer evidence as to any matter the trial court deemed relevant to sentencing,

including evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by

evidence to have been committed by the defendant or for which he could be held criminally

responsible, regardless of whether he has previously been charged with or finally convicted of

the crime or act.  Any objection by defense counsel would have been denied.  Petitioner cannot

show counsel was deficient for failing to object as such objection would have been futile.

*10.  Counsel's alleged failure to object or move for a mistrial*
*when the trial court allowed the trial to proceed without polling the jury*
*after jurors were talking with the courtroom audience during a recess*

The record shows that after a lunch break on the second day of testimony, the trial court

judge made the following admonishments to the courtroom audience:

> Ladies and gentlemen, before I seat the jury, during the lunch break, it's come to
> my attention that during breaks in this case, naturally, each of you go into the
> hallway and into the areas outside, maybe to have a smoke, and are very naturally
> discussing this case.
>
> And I want to admonish you to not do that.  The reason being is because you are
> inadvertently intermingling with either potential witnesses or worse yet, possible
> jurors in this case.
>
> I know you wouldn't intend to do so, but your comments could result in a mistrial
> in this case and all of our time will have been wasted and I will be very mad.
>
> And so I admonish you to be careful when you discuss this case, to do so in a
> private way and in a very close group so that no potential witnesses or jurors are
> influenced.

Vol. III, pp. 146-47.  Although the record shows there were reports of the audience discussing

the case in the hallways during breaks, and that the trial court warned the audience not to be

discussing the case in the halls, except quietly in small groups in case witnesses or jurors might

accidentally overhear them, the record does not reflect any member of the jury actually having

any conversation with a member of the courtroom audience, much less having a conversation

about the case with a member of the audience.  Counsel cannot be deemed deficient for failing to

request a polling of the jurors as to whether they conversed with members of the courtroom

audience when nothing has been presented to show there were any such conversations.  This

claim is without merit.

      11.   *Counsel's alleged failure to object when the 13th juror deliberated with the jury*

After the trial court read the court's charge and the State made its closing argument at the guilt/innocence phase of the trial, the trial court excused a thirteenth, or alternate, juror.  *See* Vol. III, at 277.  The remaining twelve jurors then retired to deliberate.  There is no evidence the thirteenth  juror deliberated with the remaining jury.  Petitioner's allegation is unsupported, and petitioner cannot show trial counsel was deficient in any manner with regard to this issue.  This claim is meritless.

For all of the reasons set forth above, petitioner's claims of ineffective assistance of counsel are without merit and should be DENIED.

B.
Mitigation Instruction

Petitioner argues he was denied due process when the trial court refused to include his requested special mitigation instruction in the court's punishment charge.  Petitioner requested the trial court instruct the jury as follows:

> You are further instructed that evidence admitted during either the guilt-
> innocence or punishment phase which you, in your individual judgment, may find
> to be mitigating in nature, may be considered in assessing punishment in this case
> and your consideration, if any, is not prohibited nor diminished by the fact that
> you may find against Defendant on the issue of voluntary manslaughter.

CR at 39-40.  At the trial court's charge conference, petitioner tendered the following explanation for his requested instruction :

> We understand that the trial Court has included within its Court's Charge the
> literal language lifted from Section 19.02 of the Penal Code, and accordingly has

charged the jury on this issue of sudden passion arising from an adequate cause, which constitutes voluntary manslaughter.

We also recognize that the Court has provided the jury with definitions mandated by the Code. *Our objection to the Charge has really more to do with what we perceive to be the constitutional imperfections within the recent amendments to 19.02 pertaining to this concept of voluntary manslaughter.*

*Our argument and as is contained within the request for the mitigation instruction is that the manner in which the Court is required to charge the jury necessarily does not allow the jury to use mitigation or mitigating evidence in a manner in which they may apply that toward the issue of the punishment pertaining to murder.*

For example, Your Honor, the jury may well go back to the jury deliberation room, find against the Defendant, since he does carry the burden of persuasion on the issue and, thereby, according to the Court's instructions, then consider the appropriate punishment under the theory of murder.

Given the lack of any additional instruction on how they might handle or consider in their discretion the evidence of the relationship between the Defendant, his wife and the decedent, *our argument is that the absence of an additional instruction does not permit them to apply that evidence as a mitigating factor when assessing punishment under murder.*

In other words, the absence of an instruction deprives the jury of a proper vehicle whereby they could apply and utilize mitigating evidence in assessing punishment on the theory of murder.

\* \* \*

In effect, *we are arguing that the failure of the legislature to include an appropriate instruction allowing the jury to apply mitigating evidence to assessment of punishment under the murder theory runs afoul the mandates issued by the Supreme Court as well as the Court of Criminal Appeals.*

*State v. Cartier*, 58 S.W.2d at 757-58 (emphasis added). The State objected to the inclusion of

petitioner's proposed instruction, arguing it would be confusing to the jury and that the "vehicle"

by which the jury could give effect to mitigating evidence in determining punishment was the

punishment range itself, being a range of 5-99 years or life. The State also noted the evidence

from the guilt/innocence phase was before the jury, and that the charge at the guilt/innocence phase had already instructed the jury that they could consider all the evidence before them, whether mitigating or not.  Vol. IV, at 41.  The trial court denied petitioner's request for the mitigating instruction finding "the Charge as presented does provide an adequate vehicle for the jury to consider all evidence before it in this case, including such evidence as they find to be mitigating."  Vol. IV, at 42.

In the charge at the guilt/innocence phase, the jury was instructed that "you may consider all relevant facts and circumstances surrounding the death of GARY BRUMM, including the previous relationship existing between the Defendant, JOSEPH HILL CARTIER, and GARY BRUMM, if any, together with all relevant facts and circumstances going to show the condition of the mind of the Defendant at the time of the offense, if any."  In the punishment phase charge, the jury was instructed, in part, as follows:

> Our law further provides that where a person is charged with the offense of murder and he has been found guilty of the said offense, and at the punishment phase of a trial, the jury further finds by a preponderance of the evidence that the Defendant cause the death under the immediate influence of sudden passion arising from an adequate cause, then the punishment for the offense of murder is by confinement in the Institutional Division of the Texas Department of Criminal Justice for a term of not more than 20 years or less than 2 years, and in addition to imprisonment you may assess a fine not to exceed $10,000.00.

> Our law provides that "adequate cause" means cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection.

> Our law provides that "sudden passion" means passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed which passion arises at the time of the offense and is not solely the result of former provocation.

The punishment charge did not contain a specific reference to consideration of mitigating

evidence or of all the evidence in assessing punishment.

During closing argument at the punishment phase of the trial, defense counsel made the following argument:

> This is not a plea for justification.  It is a plea of mitigation.  And let me say this to you:  If we have not persuaded you by a preponderance of the evidence that this is a case of voluntary manslaughter, you are certainly permitted and I encourage you to nevertheless give the benefit of any residual doubt that you may have as to that issue and consider this evidence I brought to you in assessing whatever punishment you give Joseph Cartier.

> In other words, I brought this evidence to you for your consideration because I submit to you it is impossible for you to render a fair verdict without the serious consideration of such under any circumstance. . . .

As noted above, the jury found petitioner did not cause the death of the victim under the immediate influence of sudden passion arising from adequate cause.  The jury assessed petitioner's sentence at life in prison.

On direct appeal of this case, the Seventh District Court of Appeals, construing this issue as a challenge to the constitutionality of the statute addressing "sudden passion" as applied to petitioner, found the statute did provide petitioner with a "vehicle" by which the jury could consider mitigating evidence during punishment.  The state appellate court found the "jury's failure to find that [petitioner] acted under the influence of sudden passion does not mean that it misunderstood the court's charge or acted without guidance on how to apply mitigation evidence.  There is nothing in the record to indicate that the jury was mislead or did not follow the court's instructions.  Rather, the jury's verdict establishes that [petitioner] did not satisfy his burden by a preponderance of the evidence to prove he acted under the immediate influence of sudden passion." *Cartier v. State*, 58 S.W.2d at 757-60.

Petitioner argues he was denied due process when the trial court refused to include his

requested special mitigation instruction in the court's punishment charge.  Improper jury

instructions in state criminal trials do not generally form the basis for federal habeas relief.

*Estelle v. McGuire*, 502 U.S. 62, 71-72, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) (stating that

federal habeas courts do not grant relief solely on the basis that a jury charge was erroneous).  In

examining federal habeas claims of improper jury instructions, the "inquiry is not whether there

was prejudice to the [petitioner], or whether state law was violated, but whether there was

prejudice of constitutional magnitude."  *Sullivan v. Blackburn*, 804 F.2d 885, 887 (5ᵗʰ Cir. 1986),

*cert. denied,* 481 U.S. 1019, 107 S.Ct. 1901, 95 L.Ed.2d 507 (1987).  The relevant inquiry is

whether the failure to give an instruction "by itself so infected the entire trial that the resulting

conviction violates due process."  *Cupp v. Naughten*, 414 U.S. 141, 147, 94 S.Ct. 396, 38

L.Ed.2d 368 (1973).  Moreover, there is a strong presumption that errors in jury instructions are

subject to harmless-error analysis.  Thus, even if the instruction was erroneous, if the error is

harmless, habeas corpus relief is not warranted.  *Brecht v. Abrahamson*, 507 U.S. 619, 623-24,

113 S.Ct. 1710, 123 L.Ed.2d 353 (1993).  In a federal habeas proceeding, a constitutional error is

not harmless only if it "had substantial and injurious effect or influence in determining the jury's

verdict."  *Id.* (internal quotation marks and citation omitted).

Here, the undersigned has found no controlling authority mandating that a defendant in a

non-capital case is entitled to a special mitigation instruction at the punishment phase of trial.

Moreover, considering the trial court's charges as a whole, they did, in fact, allow the jury to

consider all of the evidence before it, including mitigating evidence.  The undersigned cannot

find the trial court's charges were so lacking as to deny constitutional due process, nor can the

undersigned find petitioner was, in fact, prejudiced by the trial court's punishment charge

without a special instruction to consider mitigating evidence in assessing petitioner's punishment.  The trial court's instruction did not render the entire trial unfair, or result in a conviction that violates due process.  Petitioner's claim that he was denied due process by the trial court's refusal to include his requested special mitigation instruction in the court's charge is without merit.

Moreover, petitioner has not shown the state court's determination of this issue was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court.  Nor has petitioner shown the state trial court's adjudication of this issue was based on an unreasonable determination of the facts in light of the evidence. Consequently, petitioner may not obtain relief in this Court with respect to this issue.

## C.
### Punishment Charge

Petitioner argues he was denied due process because the trial court's punishment charge specifically allowed consideration of aggravating evidence in determining petitioner's punishment, but did not specifically allow the jury to consider mitigating evidence in determining petitioner's punishment.  Petitioner cites to the state trial court's punishment phase instruction to the jury that if it found petitioner committed offenses other than the offense alleged against him in the indictment in this case, that it could "consider the same as they bear upon the issue of punishment and for no other purpose."

As set forth above (paragraph B, p. 21), deficiencies in jury instructions in state criminal trials do not generally form the basis for federal habeas relief and federal habeas relief will not be granted solely on the basis that a jury charge was erroneous.  The inquiry is whether there was

prejudice of constitutional magnitude and whether the failure to give an instruction, by itself, so infected the entire trial that the resulting conviction violates due process.

As noted above, the trial court's charge at the guilt/innocence phase did, in fact, allow the jury to consider mitigating evidence.  The charge did not limit the jury's consideration of mitigating evidence only as to the issue of sudden passion, but allowed consideration of all of the evidence in determining punishment.  The trial court's charge did not allow the jury to consider aggravating evidence in determining punishment to the exclusion of consideration of mitigating evidence in determining punishment.  Defense counsel's closing argument emphasized the propriety of the jury's consideration of all of the facts in arriving at an appropriate punishment for petitioner.  The jury obviously did not believe the facts of this case warranted a lesser sentence, finding petitioner's actions deserving of a life sentence despite the "mitigating circumstances" that surrounded his crime.  The state trial court's charge was not so deficient as to deny federal constitutional due process.  Nor was petitioner prejudiced by the inclusion of the instruction allowing consideration of petitioner's other offenses in determining petitioner's punishment, without a reciprocal instruction allowing the jury to consider mitigating evidence in assessing petitioner's punishment.  Petitioner's claim should be denied.

## D.
## Non-unanimous Verdict

Petitioner argues the trial court's charge at the punishment phase was fundamentally defective because it allowed the jury to return a non-unanimous verdict on the special issue of sudden passion.  Specifically, petitioner contends the "punishment charge did not separately address the need for unanimous verdicts on the 'sudden passion' issue as well as the general

punishment verdict." Petitioner also argues the polling of the jury demonstrated a non-unanimous verdict because "only eleven jurors responded in the affirmative when asked if the verdict signed by the foreperson was their individual verdict."

The undersigned initially notes the record does not reflect that all twelve (12) jurors were polled after the reading of the verdict. Specifically, the record does not reflect that a Delia Ballejo was asked whether the jury's verdict on the special issue of sudden passion and on punishment was her individual verdict. Whether this is an error by the court reporter or whether the trial judge failed to inquire of Ballejo, such does not demonstrate a non-unanimous verdict, nor does it demonstrate a non-unanimous finding on the sudden passion issue.

On direct appeal, the Seventh Court of Appeals overruled this claim finding the jury instruction language did, in fact, require the jury to return a unanimous verdict. The court relied on the inclusion of the following language in paragraph 16 of the charge in making its determination:

> After you have retired to the jury room, it is the duty of your presiding juror to preside at your deliberations, vote with you and *when you have unanimously agreed upon a verdict*, to certify to your verdict . . . .

(emphasis added). *Cartier v. State*, 58 S.W.2d at 760. The appellate court held the term "verdict" as used in paragraph 16 of the charge meant the written declaration by the jury of its decision of an "issue" and did not allow the jury to return a non-unanimous decision adverse to petitioner on the issue of sudden passion. The undersigned cannot find this ruling by the state court is contrary to, or involved an unreasonable application of, *clearly established Federal law as determined by the Supreme Court of the United States*. Consequently, this claim is without

merit.

## E.
## "Sudden Passion" Charge

Petitioner's alleges the instruction in the punishment charge was not sufficient to distinguish between "sudden passion" and a general verdict. The undersigned is unable to determine the basis for this claim. Consequently, such claim should be denied.

## VI.
## RECOMMENDATION

It is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that the petition for a writ of habeas corpus filed by petitioner JOSEPH HILL CARTIER be DENIED.

## VII.
## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a file-marked copy of this Report and Recommendation to petitioner and to counsel of record for respondent by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 13th day of March 2006.


_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

## \* <u>NOTICE OF RIGHT TO OBJECT</u> \*

Any party may object to these proposed findings, conclusions and recommendation.  In the event a party wishes to object, they are hereby NOTIFIED that the deadline for filing objections is eleven (11) days from the date of filing as indicated by the file mark on the first page of this recommendation.  Service is complete upon mailing, Fed. R. Civ. P. 5(b), <u>and</u> the parties are allowed a 3-day service by mail extension, Fed. R. Civ. P. 6(e).  Therefore, any objections must be <u>filed</u> **on or before the fourteenth (14th) day after this recommendation is filed**.  *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b); R. 4(a)(1) of Miscellaneous Order No. 6, as authorized by Local Rule 3.1, Local Rules of the United States District Courts for the Northern District of Texas.

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation."  Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties.  A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court.  *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).